IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**DOUGLAS LEAVELL,**   Case No. 3:14 CV 1420

    Plaintiff,

    v.   Magistrate Judge James R. Knepp, II

**CITY OF SANDUSKY, et al.,**

    Defendants.   MEMORANDUM OPINION AND ORDER

INTRODUCTION

On June 27, 2014, Plaintiff Douglas Leavell filed a complaint against Defendants City of Sandusky, City of Sandusky Police Department, Officer Ron Brotherton, Officer Adam West,[1] Officer Huffman, Officer Ritterbach, Detective Dave West, and unknown officers ("Defendants"). (Doc. 1). The Complaint asserts the following claims:

1. 42 U.S.C. § 1983 Unlawful Traffic Stop Leading to a Search and Seizure
2. 42 U.S.C. § 1983 False Arrest and Imprisonment
3. Trespass
4. 42 U.S.C. § 1983 Retaliation
5. 42 U.S.C. § 1983 Municipal Liability – Failure to Train
6. Property Damage
7. Pattern or Practice

*Id*. Because Leavell's Complaint raises federal questions, the Court has jurisdiction under 28 U.S.C. § 1331. The parties consented to the undersigned's exercise of jurisdiction in accordance with 28 U.S.C. § 636(c) and Civil Rule 73. (Doc. 24). This case is before the Court on Defendants' Motion for Summary Judgment. (Doc. 33). Leavell filed a response (Doc. 37), to which Defendants replied (Doc. 40). For the reasons below, Defendants' motion is granted in its entirety and the case is dismissed with prejudice.

---

1. Adam West is a detective. (Doc. 33-15, at 3).

**BACKGROUND**

The case arises from a series of incidents between Leavell and City of Sandusky police officers spanning almost a year. Viewing the facts in the light most favorable to Leavell, the background of this case is as follows.

*June 28, 2013*

An incident on June 28, 2013, began with officers arriving at Leavell's residence—1700 South Forest Drive, Sandusky, Ohio—to investigate a possible domestic dispute and ended with his arrest. (Doc. 33-2, at 5). City of Sandusky Police Officers Stephen Ritterbach and Jonathon Huffman were dispatched to the home to investigate a possible domestic dispute after police dispatch received a call advising "there was yelling and things being thrown around". (Docs. 33-2; 33-12, at 1; & 33-13, at 1). Leavell lived at the residence with his girlfriend, Danielle Martin. (Doc. 33-16, at 5-6). Indeed, Leavell testified Martin was, in fact, breaking things in the home because she was mad at him. (Doc. 33-16, at 12-13).

When Officer Ritterbach arrived he was able to see inside and noticed torn window shades, a broken mirror, knocked down chairs, and a flipped over table. (Docs. 33-2; 33-12, at 1; & 33-13, at 1). He saw a man near the window look out, and then turn around and walk with a woman toward the east side of the residence. *Id.* Ritterbach knocked on the front door, but no one answered. *Id.* When Huffman arrived, together they again knocked on the front door. *Id.* Ritterbach ordered the occupants to open the door. *Id.* The officers informed the occupants they would not leave and would force entry if necessary. *Id.*

The factual disputes are as follows. For his part, Leavell states that after he opened the door, the officers "grabbed [him] and dragged [him] outside" and arrested him. (Doc. 33-16, at 14).

2

The officers recount that Leavell opened the front door, but began walking away, stating he did not want the officers asking him any questions because he had an attorney. *Id.* Ritterbach asserts he inquired as to the location of the woman and Leavell began to call for her as he walked toward the kitchen. *Id.* Huffman states he began to follow Leavell, who put his hands up, blocking the officers from the kitchen. *Id.* Huffman recalls he attempted to get around Leavell, to no avail. *Id.* He then arrested Leavell for obstructing official business. *Id.*

*August 31, 2013*

After observing Leavell leave a known drug area, Officer Ronald Brotherton stopped him on August 31, 2013, for making an illegal right turn. (Docs. 36, Ex. J.; 33-3, & 33-14). Leavell did not dispute the violation, instead admitting "[he] made a mistake". (Doc. 36, Ex. J). During the stop, Leavell admitted to dropping off an individual in that particular area, but would not give a specific address from where he had come. *Id.* Based on Leavell's known drug trafficking history,[2] evasiveness, and the fact that he had just come from a known drug area, Brotherton requested a K-9 unit. (Doc. 33-14). While waiting to see if there was an available K-9 unit, Brotherton requested consent to search the vehicle, but Leavell refused. (Docs. 3-14 & 36, Ex. J). Brotherton then cancelled the request because it would take too long for the dog to arrive. *Id.* He issued Leavell a written warning for the traffic violation. *Id.* The stop lasted approximately fourteen minutes. (Doc. 36, Ex. J).

*October 2, 2013*

On October 2, 2013, Officer Ron Brotherton and Detective Adam West stopped Leavell for driving in the wrong lane of travel after observing him leave a known drug location. (Docs.

---

2. Brotherton asserted the Sandusky Police Department previously found drugs on Leavell's person and in his home. (Doc. 33-14). Leavell does not dispute this and admits he is a "known felon". (Doc. 37, at 14).

3

33-4, 33-14, 33-15, & 36, Ex. K). The officers asked Leavell from where he was coming and he informed them he was not answering any questions. *Id.* Based on Leavell's known involvement with narcotics and the fact they witnessed him leave a known drug location, the officers had a K-9 unit sniff around the outside of the car. *Id.* After the dog "alerted" on the vehicle, the officers ordered Leavell from the vehicle, patted him down for weapons, and then searched the vehicle. *Id.* After failing to find any contraband, the officers issued him a written warning for the traffic violation. *Id.* The stop lasted approximately eighteen minutes. (Docs. 33-4 & 36, Ex. K).

*February 28, 2014*

On February 28, 2014, after presenting an affidavit to a Sandusky Municipal Court judge and obtaining a search warrant, Detective Adam West searched Leavell's residence—1700 South Forest Drive. West did not find any contraband during the search of the residence. (Docs. 33-5, 33-6, & 33-15).

*March 18, 2014*

On March 18, 2014, Officer Sean Orman stopped Leavell for failure to properly display registration tags on his license plate. (Docs. 33-9 & 37, Ex. 8). During the stop, Leavell stated there was no reason a dog would "hit" on the car. (Doc. 37, Ex. 8). After learning a K-9 unit was not immediately available, Orman issued a written warning for the traffic infraction and informed Leavell he was free to leave. (Docs. 33-9 & 37, Ex. 8). The stop lasted approximately fifteen minutes. *Id.*

*May 13, 2014*

In May 2014, after obtaining a search warrant from a Sandusky Municipal Court judge, Detective Adam West executed the warrant at 126 W. Parish Street, Sandusky, Ohio. (Docs. 33-7, 33-8 & 33-15). The search resulted in the seizure of a firearm, drug paraphernalia, marijuana,

4

personal items, vehicles, and cash. *Id.* As a result of the search, Leavell was arrested for having weapons under a disability, possessing criminal tools, possession of marijuana, and possession of heroin. *Id.*

### STANDARD OF REVIEW

Pursuant to Federal Civil Rule 56(c), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." When considering a motion for summary judgment, the Court must draw all inferences from the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The moving party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id*.

### ANALYSIS

As an initial matter, Defendants argue the Fifth and Fourteenth Amendments are inapplicable because the Fourth Amendment is the proper vehicle for relief. Not only does the Court agree, but Leavell presumably does as well, as he failed to respond this argument. *See Conn v. Gabbert*, 526 U.S. 286, 293 (1999) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)) ("[W]here another provision of the Constitution 'provides an explicit textual source of constitutional protection,' a court must assess a plaintiff's claims under that explicit provision and 'not the more generalized notion of 'substantive due process.'")

5

**Qualified Immunity**

Defendants argue all officers named in the Complaint are entitled to qualified immunity. Fundamentally, because the officers did not violate Leavell's constitutional rights, the Court agrees.

"Every person who, under color of [state law], subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured". 42 U.S.C. § 1983. To prevail on a Section 1983 claim, a plaintiff must prove that some conduct by a person acting under color of state law deprived the plaintiff of a right secured by the Constitution or other federal law. *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). However, a defendant may be protected against such a claim by qualified immunity.

"Qualified immunity shields government officials from civil liability in the performance of discretionary functions so long 'as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Fettes v. Hendershot*, 375 F. App'x 528, 531 (6th Cir. 2010) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Further, qualified immunity "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 343, 341 (1986)).

A plaintiff bears the burden of showing Defendants are not entitled to qualified immunity. *Untalan v. City of Lorain*, 430 F.3d 312, 314 (6th Cir. 2005). Once an officer raises qualified immunity, the plaintiff must prove: (1) the officer's conduct violated a constitutional right; *and* (2) the right was "clearly established to the extent that a reasonable person in the officer's position would know the conduct complained of was unlawful." *O'Malley v. City of*

*Flint*, 652 F.3d 662, 667 (6th Cir. 2011) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). Courts may exercise discretion in deciding which of these two prongs should be addressed first in light of the circumstances at issue. *Pearson*, 555 U.S. at 236. Plaintiffs fail to carry their burden if they fail to show either that a constitutional right was violated or that the right was clearly established. *Chappell*, 585 F.3d at 907.

**Count I – Unlawful Traffic Stop Leading to a Search and Seizure**

*Defendants Adam West and Brotherton*

Defendants argue West and Brotherton are entitled to qualified immunity for the traffic stops on August 31, 2013, and October 2, 2013. In the Sixth Circuit, "so long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resulting stop is not unlawful and does not violate the Fourth Amendment." *United States v. Ferguson*, 8 F. 3d 385, 391 (6th Cir. 1993). "The stop is reasonable if there was probable cause, and it is irrelevant what else the officer knew or suspected about the traffic violator at the time of the stop." *Id.* Police officers "can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot' even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)).

On August 31, 2013, Brotherton had probable cause for the initial traffic stop. He pulled Leavell over for making an illegal right turn on red. On the dash cam video, Leavell does not dispute this violation. (Doc. 36. Ex. J). Therefore, the initial stop was lawful. Brotherton then had a reasonable suspicion of criminal activity, supported by articulable facts—personal knowledge

that Leavell came from a known drug location and evasiveness when questioned—to briefly detain him for approximately fourteen minutes while attempting to secure a K-9 unit. *Id.*

On October 2, 2013, West and Brotherton stopped Leavell for driving in the wrong lane of travel after they observed him leave a known drug location. (Doc. 33-15, Ex. Q & Doc. 36, Ex. K). Leavell offers no evidence to dispute that this was a valid stop. Based on the officers' observations and because of Leavell's known involvement with narcotics, they had a K-9 unit sniff the outside of the vehicle. *Id.* Because the dog "alerted" on the vehicle, the officers ordered Leavell from the vehicle, patted him down for weapons, and then searched the vehicle. *Id.* After failing to find any contraband, the officers issued him a written warning for the traffic violation. *Id.* The initial traffic stop was valid, as was the subsequent brief search, which lasted approximately eighteen minutes. (Doc. 33-4). *See Illinois v. Caballes*, 543 U.S. 405, 410 (2005) ("A dog sniff conducted during a concededly lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment.").

Because the two traffic stops on August 31 and October 2, 2013, were lawful, qualified immunity shields officers Brotherton and West.[3]

**Count II – False Arrest and Imprisonment**

*Defendants Huffman and Ritterbach*

Defendants argue they are entitled to summary judgment with regard to the incident at 1700 South Forest Drive on June 28, 2013, because they either had consent from Leavell to enter the residence or exigent circumstances existed for entry without a warrant. Leavell asserts the "officers were clearly incompetent and knowingly violated the law" and states "[n]either of the

---

3. Additionally, Leavell did not bring suit against the officer involved in the March 19, 2014, incident—Sean Orman. As such, further discussion of this stop is unnecessary.

8

occupants of the house did anything remotely that was in violation of the law." (Doc. 37, at 5). He alleges "the officers had no description of who did what, when it was done or even how it was done." *Id.* Leavell further suggests that a possible domestic dispute is somehow presumptively devoid of violence when there is "no allegation that there is a gun, weapon or other deadly device." (Doc. 37, at 5-6). This assertion is not well-taken.

The Fourth Amendment protects individuals from unreasonable searches and seizures. *Andrews v. Hickman County*, 700 F.3d 845, 854 (6th Cir. 2012). "[S]earches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586 (1980). Therefore, unless an exception to the rule applies, a warrantless search or seizure of a home is unconstitutional. *Hickman County*, 100 F.3d at 854.

Consent by an individual with apparent authority is a well-established exception to the warrant requirement. *Id.* Consent must be "voluntarily given, and not the result of duress or coercion, express or implied." *Schneckloth v. Bustamonte*, 412 U.S. 218, 248 (1973). Voluntariness is a fact-specific inquiry taken in light of the totality of the circumstances. *Id.* at 248-49; *see also United States v. Worley*, 193 F.3d 380, 385 (1999). Another exception to the warrant requirement is if "'the exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Mincey v. Arizona*, 437 U.S. 385, 394 (1978) (citing *McDonald v. United States*, 335 U.S. 451, 456 (1943); *Johnson v. United States*, 333 U.S. 10, 14-15 (1948)). The exigent circumstances exception applies when there is a "need for prompt action by government personnel" and a delay for securing a warrant "would be unacceptable under the circumstances." *United States v. Plavcak*, 411 F.3d 655, 663 (6th Cir. 2005). Exigent circumstances exist where there is "a risk of danger to police or others." *United States v. Johnson*, 22 F.3d 674, 680 (6th Cir. 1994). In

9

making a determination regarding exigent circumstances, courts often look to the nature and gravity of the underlying offense. *Welsh v. Wisconsin*, 466 U.S. 740, 751-52 (1984).

Here, whether or not Leavell voluntarily consented, under the circumstances, exigent circumstances existed for the officers to enter without a warrant. The officers were dispatched to the residence after a caller advised of a possible domestic dispute. Upon arrival, they noticed two individuals in the home and the home in disarray. Indeed, Leavell confirmed the caller's observations by stating "[m]y girlfriend [was] breaking stuff". (Doc. 33-16, at 12). The nature of the underlying offense—domestic violence—is indisputably grave. See *United States v. Humphrey*, 2007 WL 1341356, *5 (W.D. Tenn. 2007) ("[D]omestic violence situations are without question potentially volatile and dangerous"). Therefore, in light of all the circumstances, the Court finds it objectively reasonable for the officers to believe a physical altercation had occurred and someone inside the home was at least at risk of danger and possibly in need of assistance, permitting the warrantless entry.

Leavell alleges he was subject to a false arrest. In order to prevail on a false arrest claim brought under 42 U.S.C. § 1983, a plaintiff must show the arresting officer lacked probable cause for the arrest. *Voyticky v. Village of Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir. 2005). "For a police officer to have probable cause for arrest, there must be 'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense.'" *Crockett v. Cumberland College*, 316 F.3d 571, 580 (2003) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). The Fourth Amendment does not require officers to have proof of each element of the offense, but rather a probability that an individual committed the offense. *Thacker v. City of Columbus*, 328 F.3d 244, 256 (6th

10

Cir. 2003). Probable cause is a complete defense to a false-arrest claim. *Halasah v. City of Kirtland, Ohio*, 574 F. App'x 624, 629 (2014).

Leavell was initially arrested for obstructing official business. In Ohio, "[n]o person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's capacity, shall do any act that hampers or impedes a public official in the performance of the public official's duties." Ohio Revised Code § 2921.31.

Here, there is a factual dispute as to the circumstances surrounding Leavell's arrest. According to the officers, Leavell was arrested after he physically prevented them from investigating a potential domestic dispute by blocking entry to a portion of the home. (Docs. 33-12 & 33-13). Leavell disputes this—testifying that once he opened the door to the home, he was immediately arrested without any interaction between the parties. (Doc. 33-16).

However, Defendant argues the officers had probable cause to arrest Leavell for domestic violence—a crime for which he was later charged. Indeed, "an arresting officer's 'subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause.'" *United States v. Harness*, 453 F.3d 752, 755 (6th Cir. 2006) (quoting *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (citations omitted)). Therefore, "knowledge of the precise crime committed is not necessary to a finding of probable cause provided that probable cause exists showing that a crime was committed by the defendant". *United States v. Reagan*, 401 F. App'x 14, 16 (6th Cir. 2010) (quoting *United States v. Anderson*, 923 F.2d 450, 457 (6th Cir. 1991)).

> In Ohio, a police officer has probable cause for domestic violence when:
>
> based upon the peace officer's own knowledge and observation of the facts and circumstances of the alleged incident of the offense of domestic violence . . . or

11

based upon any other information, including, but not limited to, any reasonably trustworthy information given to the peace officer by the alleged victim of the alleged incident of the offense or any witness of the alleged incident of the offense, concludes that there are reasonable grounds to believe that the offense of domestic violence . . . has been committed and reasonable cause to believe that the person in question is guilty of committing the offense.

Ohio Rev. Code § 2935.03(B)(3).

Here, the police department received information they could deem reasonably trustworthy from a caller about a possible domestic dispute at 1700 S. Forest Drive. Leavell does not dispute that there was some type of disturbance in the home and states his girlfriend was upset and breaking things. Upon arrival, the officers observed two individuals in the home and items within the home broken and in disarray. Due to the call and the condition of the home upon arrival, the Court finds it was reasonable for the officers to believe the offense of domestic violence had occurred and Leavell was guilty of that offense.

Exigent circumstances existed for officers to enter the residence without a warrant and even though Leavell was initially arrested for obstructing official business, officers had probable cause to arrest him for domestic violence. Leavell has therefore failed to establish the officers' conduct was objectively unreasonable based on clearly established law. *O'Malley*, 652 F.3d at 667. There are not genuine issues of *material* fact. Huffman and Ritterbach are entitled qualified immunity for the incident on June 28, 2013.

**Count III – Trespass**

Leavell alleges Officers Ritterbach and Huffman committed a trespass when they entered his residence on June 28, 2013, without a search warrant or permission to do so. (Doc. 1, at 10). Because the Court finds officers could reasonably believe there was a victim of domestic violence in the home and in danger from an ongoing threat, defendants are entitled to summary judgment on this claim. *Hunter*, 502 U.S. at 229.

**Search Warrants**

*Defendants Adam West and David West*

Defendants argue Adam West is entitled to qualified immunity for the execution of two valid search warrants. (Doc. 33, at 21-22). Defendants also assert Leavell failed to state any claims against Detective David West, because he was not involved in obtaining or executing these warrants. It is not clear from the face of the Complaint under which Count Leavell challenges the two search warrants and he failed to respond to Defendants' arguments related to such. He also offers no evidence Detective David West was in any way involved.

The claim against Detective Adam West fails on the merits as well. *See Yancey v. Carroll County, Ky.*, 876 F.2d 1238, 1243 (6th Cir. 1989) ("Police officers are entitled to rely on a judicially secured warrant for immunity from a § 1983 action for illegal search and seizure unless the warrant is so lacking in indicia of probable cause, the official belief in the existence of probable cause is unreasonable."). Further, on August 5, 2016, in affirming Leavell's underlying conviction, the Sixth Appellate District of Ohio found that the search warrant executed at 126 W. Parish Street was valid. (Doc. 41, Ex. A, *State of Ohio v. Douglas Leavell*, Case No. E-15-030 and E-15-031 (6th Dist. 2016)). Thus, claims against Adam West relating to the two search warrants, and all claims against David West, are dismissed.

**Count IV – Retaliation**

Leavell asserts Defendants retaliated against him for filing a complaint in September 2008 for the unlawful impounding of his truck. (Docs. 1, at 10; 33-16, at 39-41). He asserts Defendants "have been engaging in a pattern, practice custom and usage of violating [his] constitutionally protected rights" by routinely detaining him for unreasonable periods of time, trespassing on his property, and attempting to force him to waive his constitutional rights. (Doc.

13

1, at 11). Defendants argue Leavell's retaliation claim fails because there is no nexus between Leavell's complaint in 2008 and his arrest in 2013. (Doc. 33, at 24).

"[W]hen the alleged violation of federal law is that a government official retaliated against a plaintiff for exercising his constitutional rights . . . the plaintiff must ultimately prove three sub-elements: (1) the plaintiff engaged in constitutionally protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct." *Mezibov v. Allen*, 411 F.3d 712, 717 (6th Cir. 2005). Not only must there be a causal connection between the first and second elements, but there must also be a nexus between the protected conduct and the alleged retaliation. *Thaddeaus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999); *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004).

Because Leavell fails to offer any evidence tending to show a connection between the 2008 complaint and his arrest in 2013, Defendants are entitled to summary judgment with regard to this claim.

## **Count V – Municipal Liability – Failure to Train**

*City of Sandusky Police Department*

As an initial matter, Defendants assert the Sandusky Police Department is not a *sui juris* entity and, therefore, cannot be separately sued. (Doc. 33, at 26). Indeed, police departments "are merely sub-units of the municipalities they serve" and cannot separately sue or be sued. *Nash v. Cuyahoga Metro. Hous. Auth., et al.*, 2008 WL 495616, at *2 (N.D. Ohio). Leavell does not dispute this fact as he failed to respond to this argument. Therefore, the Sandusky Police Department is entitled to summary judgment with regard to all claims.

*City of Sandusky*

In Count V of the Complaint, Leavell asserts Defendants established:

a practice, policy, and/or custom, or lack thereof, of improperly training, re-training, instructing, disciplining, and/or allowing its police officers to enforce ordinances and state law without regard to the constitutional rights of citizens to be free from violations of the Second, Fourth, Fifth, and Fourteenth Amendments, including a practice of searching people without probable cause.

(Doc. 1, at 11-12). He also alleges the officers were improperly trained regarding the handling of drug dogs and the drug dogs themselves were improperly and inadequately trained. (Doc. 1, at 12). Leavell asserts Defendants "have no drug dog policy in place." *Id.*

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell v. Dep't of Soc. Servs of City of New York*, 436 U.S. 658, 691 (1978) (emphasis in original); *DePiero v. City of Macedonia*, 180 F.3d 770, 786 (6th Cir. 1999). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694; *see also Sova v. City of Mt. Pleasant*, 142 F.3d 898, 904 (6th Cir. 1998) (quoting *Monell*, 436 U.S. at 694) ("In other words, a municipality can be liable under § 1983 only where its policies are 'the moving force' behind the constitutional violation.")

When damage is inflicted by police officers, a city can also be held liable for failure to train its employees. *Sova*, 142 F.3d at 904. In order to succeed on a failure to train claim, a plaintiff must establish: "that a training program is inadequate to the tasks that the officers must perform; that the inadequacy is the result of the city's deliberate indifference; and that the inadequacy is 'closely related to' or 'actually caused' the plaintiff's injury." *Hill v. McIntyre*,

884 F.2d 271, 275 (6th Cir. 1989) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989)).

First, contrary to Leavell's initial assertion, the City of Sandusky Police Department does have a drug dog policy. (Doc. 33-10). In his response, Leavell acknowledges this fact, but argues the policy is unconstitutional. (Doc. 37, at 11). Second, and more importantly, Leavell has failed to establish he suffered any constitutional injury; much less that it was the result a particular policy or a failure to train. Defendants are entitled to summary judgment on this claim.

**Count VI – Property Damage**

Leavell alleges that during the October 2, 2013 traffic stop, the K-9 unit damaged his vehicle by scratching it. (Doc. 1, at 13). Defendants assert the officers and the City of Sandusky are immune from this claim under Ohio Revised Code § 2744. (Doc. 33, at 25). The Court agrees.

In Ohio, police services constitute a governmental function. Ohio Rev. Code § 2744.01(C)(2)(a). Generally, "a political subdivision is not liable in damages in a civil action for . . . loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." § 2744.02(A)(1). However, they are not immune from liability if "[t]he employee's actions or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner". § 2744.03(A)(6)(b).

Here, Leavell presents no evidence of such intent when the K-9 unit allegedly scratched his vehicle during the stop on October 2, 2013. Therefore, the City of Sandusky and all officers are entitled to summary judgment on Leavell's property damage claim.

**Count VII – Pattern or Practice**

Leavell also asserts Defendants conduct constitutes "a pattern, practice custom and usage of violating [his] constitutionally protected rights." (Doc. 1, at 13). For the reasons above, specifically in the discussion of Count V, Defendants are entitled to summary judgment on this claim as well.

### CONCLUSION

In summary, Leavell failed to respond to some of Defendants' summary judgment arguments—the retaliation claim under Count IV, the property damage claim under Count VI, claims association with the two search warrants executed by Detective Adam West, any claims under the Fifth and Fourteenth Amendments, and all claims against the City of Sandusky Police Department and Detective David West. This alone is sufficient to grant summary judgment. *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009). Additionally, regardless of his failure to respond, as discussed above, all of his claims fail as a matter of law. *See Humphrey v. United States Att'y Gen. Office*, 279 F. App'x 328, 331 (6th Cir. 2008) (finding a plaintiff waived arguments by way of failing to respond to defendant's motion and, even so, the claims failed as a matter of law).

The Court finds there are no genuine issues of material fact and Defendants are entitled to summary judgment as a matter of law. Defendants' Motion for Summary Judgment (Doc. 33) is granted in its entirety and the case is dismissed with prejudice.

    s/James R. Knepp II
    United States Magistrate Judge